IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GEORGE LOPEZ,<br><br>           Plaintiff,<br><br>vs.<br><br>ADMINISTRATIVE OFFICE OF THE COURTS; and KATHY ELTON,<br><br>           Defendants. | ORDER<br><br>and<br><br>MEMORANDUM DECISION<br><br>Case No. 2:07-CV-571 |

Plaintiff George Lopez brought several claims against the Administrative Office of the Courts (AO) and Kathy Elton. Mr. Lopez alleges breach of contract; breach of implied contract; breach of the implied covenant of good faith and fair dealing; causes of action under 42 U.S.C. § 1983 for violation of his equal protection rights and procedural due process rights; and breach of public policy. Defendants have now filed a motion for summary judgment on all causes of actions.

For the reasons set forth and as more fully detailed below, Defendants' Motion for Summary Judgment (Dkt. No. 88) is GRANTED.

**BACKGROUND**

The Alternative Dispute Resolution (ADR) Department of the AO manages an ADR roster and a roster for the Co-Parenting Mediation Program (the CMP roster). Mr. Lopez is currently on the ADR roster and was, until 2006, on the CMP roster. Qualified mediators may apply to be placed on the ADR roster, but the CMP roster does not have a similar application process. Rather, mediators are selected or invited to be on the CMP roster.

In the fall of 1998, Ms. Elton joined the AO as a Program Manager in the ADR Program. Ms. Elton was promoted to ADR Director in 2000, where she served until 2008. As the ADR Director, Ms. Elton oversaw the ongoing implementation and administration of the CMP roster. In 2004, the CMP Program Manager Guy Galli drafted a "Best Practices" document with the collaboration of Ms. Elton and AO Assistant Director Richard Schwermer. The Best Practices document identifies a rotational basis for selecting mediators. But because of deadlines imposed by the court for scheduling mediation and the availability of mediators, strict adherence to a rotation was impractical.

During 2006, Ms. Elton became concerned about Mr. Lopez's performance as a mediator. First, Ms. Elton learned that Mr. Lopez had sent a letter to parties seeking mediation. This was in violation of the ethical rule prohibiting direct contact with represented parties. Then, in July 2006, Ms. Elton received an unfavorable evaluation for a CMP mediation conducted by Mr. Lopez.[1] Approximately one month later, Ms. Elton received another unfavorable evaluation for Mr. Lopez indicating that Mr. Lopez had made "findings" during the mediation process and had made a recommendation that potentially involved more billable hours to the clients. In response to these evaluations, Ms. Elton reviewed Mr. Lopez's files. She contacted him to discuss the apparent ethical violations alleged against him, but Mr. Lopez insisted that no ethical violation occurred.

After the attempted discussion with Mr. Lopez, Ms. Elton consulted with the AO Counsel Bret Johnson, Mr. Schwermer, and then-CMP Program Manager Philip Sherman, to determine

---

[1] Ms. Elton later discussed this evaluation with Mr. Lopez and, in view of his explanations, agreed that the concerns were resolved.

the appropriate course of action. Based on this consultation, Ms. Elton sent a Mr. Lopez a letter of removal on August 8, 2006, telling Mr. Lopez that effective August 16, 2006, he would be removed from the CMP roster.

On August 21, 2006, Mr. Lopez submitted a memorandum in response to the letter of removal. After receiving this memorandum, Ms. Elton notified the Judicial Council ad hoc Committee (the Committee) of the complaints against Mr. Lopez and the action she had taken. The Committee appointed a three-person ethics panel that reviewed the unfavorable evaluations and Ms. Elton's decision. Following the review, the ethics panel requested a hearing with Mr. Lopez, which was held on October 4, 2006. The ethics panel issued its findings of fact and decision from the hearing on November 29, 2006. The panel found Mr. Lopez in violation of the Utah Rules of Court Annexed Alternative Dispute Resolution.

Before the investigation of Mr. Lopez, Ms. Elton had investigated only two other individuals on the CMP roster. Neither of the previous investigations involved ethical issues and both were handled through a conversation with the involved mediators.

After the ethic panel's decision, Mr. Lopez made three requests to be reinstated to the CMP roster. The first request was made in January 2007, the second in June 2007, and the third in September 2007. After the first request, Ms. Elton reviewed a complaint from another CMP participant that Mr. Lopez had exceeded his role as a neutral facilitator in the participant's case during June 2006 to April 2007. In July 2007, Ms. Elton responded to and denied Mr. Lopez's first two requests for reinstatement. The Management Committee of the Judicial Counsel reviewed and denied Mr. Lopez's third and final request for reinstatement.

**ANALYSIS**

**Standard of Review**

<u>Summary Judgment</u>

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." <u>N. Natural Gas Co. v. Nash Oil & Gas, Inc.</u>, 526 F.3d 626, 629 (10th Cir. 2008).

<u>Qualified Immunity</u>

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "Once a defendant raises the defense of qualified immunity as a defense to an action, '[t]he plaintiff carries the burden of convincing the court that the law was clearly established.'" <u>Powell v. Mikulecky</u>, 891 F.2d 1454, 1457 (10th Cir. 1989) (quoting <u>Pueblo Neighborhood Health Ctrs., Inc. v. Losavio</u>, 847 F.2d 642, 645 (10th Cir. 1988)).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." <u>Weigel v. Broad</u>, 544 F.3d 1143, 1153 (10th Cir. 2008) (quoting <u>Cruz v. City of Laramie</u>, 239 F.3d 1183, 1187 (10th Cir. 2001)). This does not require that the plaintiff show that the very act in question was previously held unlawful. Rather, the contours of the law "must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

**Breach of Contract and Breach of Implied Contract**

"Any claim for breach of contract must be predicated on the existence of an express or implied contract." Buckner v. Kennard, 2004 UT 78, ¶ 31, 99 P.3d 842. "An express or implied-in-fact contract results when 'there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain.'" Heideman v. Washington City, 2007 UT App. 11, ¶ 25, 155 P.3d 900 (quoting Rapp v. Salt Lake City, 537 P.2d 651, 654 (Utah 1974)). Although the existence of an implied contract is a factual question, "the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists." Sanderson v. First Sec. Leasing Co., 844 P.2d 303, 304 (Utah 1992).

There is no evidence that Mr. Lopez had an express employment contract with the AO. But Mr. Lopez contends that he had an implied contract for mediation services with the AO. According to Mr. Lopez, the implied contract "manifested in various agreements, memoranda, polices and procedural notices." (Lopez Mem. Opp. [Dkt. No. 100] at 15.)

Although employment of public employees is typically governed by statute and not contract, "circumstances may exist where the government voluntarily undertakes an additional duty beyond its normal obligation to the employee, in which case an implied contract arises." Canfield v. Layton City, 2005 UT 60, ¶ 16, 122 P.3d 622 (internal quotations omitted). Such an implied contract may "arise from a variety of sources, including the conduct of the parties announced *personnel policies*, practices of that particular trade or industry, or other

5

circumstances." Id. ¶ 17 (quoting Knight v. Salt Lake County, 2002 UT App. 100, ¶ 2, 46 P.2d 247). In Canfield, the court held that the plaintiff had sufficiently pled a claim for breach of an implied employment contract because the plaintiff alleged that through the personnel policy the employer voluntarily undertook an additional duty and later breached that duty. Id. ¶¶ 22, 24.

Here, Mr. Lopez relies on the Best Practices document to show an implied contract existed. But there is no evidence that through the Best Practices document the AO undertook any additional duty. Mr. Lopez even admits that the AO never established procedures for the review and evaluation of the ADR program and the performance of ADR providers. The Best Practices document standing alone is not "a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain" as required to create an implied contract. See Heideman, 2007 UT App. 11, ¶ 25. Because there is no evidence that the AO undertook an additional duty through the Best Practices document, the Defendants are entitled to summary judgment on Mr. Lopez's breach of contract claims.

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

Because there was no contract, there was necessarily no breach of the covenant of good faith and fair dealing. Heideman, 2007 UT App. 11, ¶ 27 n.15.

**42 U.S.C. § 1983 – Equal Protection**

Mr. Lopez's equal protection claim appears to be based on a "class of one." Mr. Lopez has identified no other class to which he belongs.

To establish a "class of one" claim, the plaintiff must show that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis

6

for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Here, there is no evidence that any other person was similarly situated to Mr. Lopez. Mr. Lopez contends that there is a question of fact as to whether others who were similarly situated were treated more fairly. But Mr. Lopez does not point to any facts that would dispute Ms. Elton's statement that there had been only two other individuals whom she investigated and that neither investigation involved ethics violations. Rather, Mr. Lopez asserts that he "is without information to know the truth of this statement." (Lopez Mem. Opp. [Dkt. No. 100] at 9 ¶¶ 42-43.) This statement is not enough to create a genuine dispute of fact, especially given that discovery has closed in this case.

Because it is undisputed that no other mediators have been investigated for ethics violations, Mr. Lopez cannot show that he was treated differently from others who were similarly situated. Accordingly, Defendants are entitled to summary judgment on Mr. Lopez's equal protection claim. The court need not address the second prong of the qualified immunity analysis—whether the law was clearly established.

**42 U.S.C. § 1983 – Due Process**

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

Property Interest

As a threshold matter, the court must determine whether Mr. Lopez has a protected property interest in having his name on the CMP roster. See Fed. Lands Legal Consortium v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999). "To have a property interest in a benefit, a

7

person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents, 408 U.S. at 577. Whether a claim of entitlement exists is determined according to state law.

Mr. Lopez contends that the Best Practices rotational policy gave him a property interest in remaining on the CMP roster. "The existence of a property right in such a case turns on whether the alleged claim of entitlement is supported or created by state law such as a state statute or regulatory scheme or decisional law." Veile v. Martinson, 258 F.3d 1180, 1185 (10th Cir. 2000) (quoting Morely's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1216-17 (11th Cir. 1995)).

In Veile, the plaintiffs claimed a constitutionally protected property interest in a rotation policy. Id. at 1183. The county coroner had established a policy requiring the referral of coroner cases to two mortuaries on an odd- and even-month rotating basis. Id. This policy, the plaintiffs alleged, created a protected property interest in the referrals. Id. The Tenth Circuit found that the most analogous case law was that addressing tow truck/wrecker rotational policies utilized by law enforcement organizations to deal with auto accidents. Id. at 1185. In one such case, the Tenth Circuit had held that an Oklahoma statute requiring certain cities to make wrecker referrals "'on an equal basis as nearly as possible'" created a property interest in wrecker referrals. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231-32 (10th Cir. 1990). The Tenth Circuit then adopted the principle established by the Eleventh Circuit in Morely's Auto Body (examining the decision in Abercrombie, its own case law, and other circuit case law): whether there is a property right in a rotational policy depends on whether the claim of entitlement is supported or

8

created by state law.  Veile, 258 F.3d at 1185.

Applying the principle announced by the Eleventh Circuit, the Veile court found that the "rotation policy does not give rise to a constitutionally protected property interest, because any expectations arising from the rotation policy are not grounded in Wyoming law."  Id. at 1186.  Rather, the expectation was based on the coroner's policy itself.  Id.  The principle adopted by the Tenth Circuit illustrates the difference between the Abercrombie case and the Veile case: in Abercrombie, the rotational policy was based on an Oklahoma statute, whereas in Veile, the coroner's rotation policy had no ground in Wyoming state law.

Here, Mr. Lopez contends that the policy established in the Best Practices document creates a protected property interest in remaining on the roster.  Similar to Veile, Mr. Lopez has not cited, nor has the court found, any Utah statute, regulation, administrative rule, or case law that may be construed to establish his entitlement to receive CMP mediation opportunities.  Rather, he claims that the Best Practices policy itself creates the alleged property interest.  Because, like in Veile, any expectation arising from the rotation policy is not grounded in Utah law, Mr. Lopez does not have a constitutionally protected property interest.  Accordingly, the court need not decide whether the law was clearly established.

Liberty Interest

The Fourteenth Amendment's due process clause entitles a public employee to certain procedures when his government employer threatens his liberty interest in his "good name and reputation as it affects his protected property interest in continued employment."  Workman v. Jordan, 32 F.3d 475, 480 (10th Cir. 1994).  In Workman, the Supreme Court set forth a four-part test that a plaintiff must satisfy for a liberty-interest claim:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published. These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest.

Id. at 481 (citations omitted).

Here, there is no evidence of several of the required elements. First, as discussed above, there is no evidence that Mr. Lopez was employed by the AO. Second, there is no evidence that Ms. Elton made any false statements. Accordingly, there is no evidence that any such statements were made in the course of terminating Mr. Lopez or that they foreclosed other employment opportunities. Similarly, there is no evidence that any such statements were published.

Because there is no evidence on several of the required Workman elements, Defendants are entitled to summary judgment on Mr. Lopez's due process claim based on his liberty interest. The court need not decide whether the law was clearly established.

**Breach of Public Policy**

"[A]ll employers have a duty not to terminate any employee, 'whether the employee is at-will or protected by an express or implied employment contract,' in violation of a clear and substantial public policy." Ryan v. Dan's Food Stores, Inc., 972 P.2d 395, 404 (Utah 1998).

> To make out a prima facie case of wrongful discharge, an employee must show (i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are casually connected.

Id.

As discussed above, there was no employment contract, express or implied, between Mr. Lopez and the AO. Accordingly, Mr. Lopez could not have been terminated in violation of

public policy. Further, there is no evidence that there was a "clear and substantial public policy." For these reasons, Defendants are entitled to summary judgment on Mr. Lopez's breach of public policy claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 88) is GRANTED.

SO ORDERED this 2nd day of November, 2011.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge